273 N.J. Super. 118 (1994)
641 A.2d 268
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CLARENCE MOORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1994.
Decided April 14, 1994.
*121 Before Judges J.H. COLEMAN, MUIR, Jr., and LEVY.
Matthew Astore, Deputy Public Defender II, argued the cause for appellant (Susan L. Reisner, Acting Public Defender, attorney).
Nancy A. Hulett, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
Defendant appeals the denial of his post-conviction relief petition. We affirm.
The post-conviction relief petition came a little over two years after this court affirmed defendant's convictions on three counts of aggravated sexual assault, two counts of robbery, and one count of burglary but directed non-merger of the sexual assault convictions.
The appeal rejected contentions that certain prosecutorial comments required reversal; that the trial court erred in ruling defendant's prior convictions, one of which was carnal abuse, were admissible to attack defendant's credibility; that the trial court erred in denying acquittal, judgment notwithstanding the verdict, and new trial motions; that the trial court erred in admitting the victim's in-court identification of defendant on grounds the State *122 failed to comply with the dictates of State v. Hurd, 86 N.J. 525, 432 A.2d 86 (1981), and the photographic arrays were unduly suggestive; that the sentence was excessive; and that the trial court erred in denying a change of venue or the empaneling of a foreign jury.
On September 4, 1991, after granting defendant permission to file an overlength brief, the Supreme Court denied defendant's petition for certification. Thereafter, the Court denied a motion for reconsideration. The same public defender who represented defendant on the applications to the Supreme Court has represented him on the trial and appellate phases of the post-conviction relief petition.
Defendant on this appeal contends:
POINT I
THE NEW JERSEY COURT RULES DO NOT PRECLUDE DEFENDANT CLARENCE MOORE FROM POST-CONVICTION RELIEF IN THE MATTER AT BAR.
A. Since The Issues Raised In The Petition For Post-Conviction Relief Were Not Previously Adjudicated And Those Constitutional Issues Are Of Substantial Import, R. 3:22-5 Does Not Bar Relief.
B. Since The Issues Contained In The Petition For Post-Conviction Relief Could Not Have Been Raised On Direct Appeal, R. 3:22-4 Does Not Preclude Relief.
POINT II
DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL BY COUNSEL'S FAILURE TO ALLEGE AS ERROR MANY INSTANCES OF PROSECUTORIAL MISCONDUCT.
A. The Prosecutor Improperly Referred To Matters Outside The Evidence And He Virtually Testified Regarding His Personal Opinion As To The Veracity Of Testimony And The Guilt Of Defendant.
B. The Prosecutor Misstated The Law And Diluted The Burden Of Proof When He Told The Jury That Guilt Beyond A Reasonable Doubt Meant That "The Odds Are" Defendant Did It.
C. The Prosecutor Repeatedly Disparaged And Ridiculed The Defense And Defense Counsel.
D. Cumulative Error.
POINT III
DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL BY COUNSEL'S FAILURE TO ALLEGE AS ERROR THE TRIAL COURT'S PRECLUSION OF TRIAL COUNSEL'S CHALLENGE *123 OF THE RACIAL COMPOSITION OF DEFENDANTS PETIT JURY PANEL.
POINT IV
THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

I
Defendant, both in his brief and at oral argument, characterized the evidence of guilt as "shockingly slight." We recognize such assessments are shaded by the viewer's perspective. We begin therefore by reviewing the pertinent State's evidence.
On January 14, 1986, some time after 1:20 a.m., 25-year-old M.A. was viciously assaulted by a man in the bedroom of her cottage in Somers Point. M.A. went to bed that night only to be awakened by a male who grabbed her by the neck. The male demanded money, and M.A. removed $8 from her purse and gave it to him. When M.A. could produce no more money, the man became angry. He ordered her to undress. Despite the man's assurance she would not be hurt if she did as she was told, the man penetrated her anally after she complied with his directions to roll over on her stomach and then kneel on her hands and knees. The man then ordered her to roll over and he penetrated her vaginally. He then forced her to perform fellatio on him until he ejaculated. Still angered by lack of money, the man forced her to again perform oral sex until he achieved an erection. He then ordered her to kneel on the bed and "shake" her rear in the air while someone outside watched. He warned her if she did not do this "he would come back and do it again or kill" her. M.A. remained in her bed for four hours fearful the man was still in the house.
Finally, she arranged to have the police called and, when the police arrived, M.A. described her attacker. She described him as a black male, about 5'8" to 5'10" tall, late twenties to early thirties, very muscular and strong. (There is no dispute by defendant that the description could apply to him.) She also said her attacker *124 had been wearing blue jeans. Further, she described him as having some facial hair on the sides of his face.
While the bedroom was dark, there was enough outside light "to see a face." Also, although she was not wearing her contact lenses that corrected her nearsightedness, she stated the attacker was "very close" to her, close enough for her to see him and his face. Defendant, on the original appeal, as he does now, suggests the victim's vision was impaired because she was not wearing her contact lenses. However, M.A. testified she could see without her contacts, that she had driven without them, and her vision did not prevent her from seeing things close to her.
When M.A. could not give the police composite artist sufficient information to develop a composite sketch, she suggested hypnosis, thinking it "might help [her] remember, in more detail, his face." With the aid of hypnotically enhanced memory, she could vividly recall her attacker's facial features. She thereafter was able to positively identify defendant as her assailant both in court and on three occasions in out-of-court photographic arrays. She described the hypnotic enhancement as making her attacker's face "much clearer" with "the features ... more detailed." She also testified she initially could not positively recognize her assailant without the hypnosis. There is nothing in the record to suggest either the police or the doctor assisting the hypnosis in any way suggested what the assailant might look like.
As a result of the hypnosis, M.A. also recalled her assailant wore a tan suede jacket with dirt around the pockets. A subsequently executed search warrant at defendant's residence turned up a tan suede sweater jacket with pockets along with several pairs of blue jeans.
To paraphrase our original opinion, this evidence, if the jury found M.A. credible, was more than sufficient for the jury to find defendant guilty beyond a reasonable doubt. As our case law has so often stated, the issue of credibility is for the jury. State v. Ingenito, 87 N.J. 204, 211, 432 A.2d 912 (1981). It is pertinent to *125 note that defendant's disagreement with the jury's credibility finding does not make the State's evidence "shockingly slight."
Defendant postulates that the ineffective assistance of appellate counsel claim entitled him to a post-conviction evidentiary hearing that would demonstrate his judgment of conviction would be overturned. Arguing since the ineffective assistance of appellate counsel claim could not have been previously raised, the trial court erred when it denied him the opportunity to present the opinion of a legal expert  a lawyer with appellate experience  that original appellate counsel was not only deficient but that this court would probably have overturned his conviction had the deficiency not occurred. The predicate for the deficiency claim is appellate counsel's failure to raise three categories of issues, all of which could have been raised and would be procedurally barred but for the constitutional attiring of the petition in ineffective assistance of counsel clothing.

II
Ineffective assistance of counsel claims have found a niche in the post-conviction relief procedure. They have been found particularly suitable to the procedure because they often cannot reasonably be raised in prior proceedings. See State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). Their unsuitability for direct review is because they center on collateral issues involving allegations and evidence that lie outside the trial record. Ibid. Consequently, ineffective assistance of counsel claims, particularly ineffective assistance of appellate counsel, are congruous with the exceptions to the procedural bar of R. 3:22-4 because they (1) implicate issues that could not have been reasonably raised in prior proceedings; (2) involve infringement of constitutional rights; or (3) present exceptional circumstances involving a showing of fundamental injustice. See State v. Mitchell, 126 N.J. 565, 584, 601 A.2d 198 (1992). Defendant's petition argued only the first two circumstances.
*126 Defendant's contention that he could not have raised the ineffective assistance of appellate counsel (a public defender pool attorney) issue before his petition is an apparent distortion. Upon affirmance of his conviction by this court, the public defender turned the case over to a Deputy Public Defender II. That attorney then filed an overlength brief in connection with defendant's petition for certification to the Supreme Court. One of the issues raised in that brief was the "egregious pervasive prosecutorial misconduct." The brief did not raise the issue of ineffective assistance of appellate counsel. Thus, it appears defendant, through counsel, chose for strategic reasons to challenge the "pervasive" prosecutorial misconduct that he now condemns appellate counsel for not raising but chose not to assert ineffective assistance of appellate counsel for failure to raise that pervasiveness issue. That choice at least suggests the strategy was to preserve the ineffective assistance issue for a post-conviction relief petition in order to secure another review of prosecutorial misconduct allegations.
In any event, in his petitions to the Supreme Court, defendant had the right to raise the ineffective assistance of appellate counsel claim. R. 2:2-1(a). The Supreme Court could have considered, but did not have to consider, an ineffective assistance of appellate counsel issue when it denied certification. See The Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 289, 261 A.2d 143 (1970). Consequently, although the issue was not raised before the Supreme Court, we do not accept defendant's contention that he did not have the opportunity to previously raise the issue.
That notwithstanding, defendant's claim of entitlement to an evidentiary hearing on his petition misconceives the decisional law of this State and the role of the trial court when considering a post-conviction relief petition where an ineffective assistance of appellate counsel claim is made. Defendant relies on State v. Preciose, supra, 129 N.J. at 462, 609 A.2d 1280, where the Court essentially found there "more likely" was need for an evidentiary *127 hearing in post-conviction relief cases where ineffective assistance of counsel is claimed because facts often lie outside the trial record and because in cases where the charge is against appellate counsel the attorney's testimony may be required to explain reasons for his or her inaction.
In this instance, there are no facts outside the record. All of defendant's grounds for his ineffective assistance of counsel claim relate to what transpired at trial. The only possible reason for a hearing in this case would have been for original appellate counsel to explain why she did not raise the issues defendant now finds so persuasive as grounds for reversal.
Yet, defendant never proffered the testimony of original appellate counsel. Instead he offered an expert's opinion  an opinion by a lawyer who is experienced in appellate procedure  that original appellate counsel's failure to raise the contended persuasive issues was deficient and that, in absence of the deficiency, the conviction would probably have been reversed. The tenor of defendant's argument then is that he had the right to have his legal expert give the trial court legal advice so it could resolve the ultimate issue before it.
Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or determine a fact in issue." Evid R. 56(2) (now N.J.R.E. 702). It must relate to a relevant subject beyond the ken of the fact trier. See State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984). The subject matter must be so esoteric that it is beyond common judgment and experience so the fact trier cannot form a valid judgment as to the fact in issue without such testimony. Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982). The proposed testimony did not fall within these parameters for allowing expert testimony. There is no basis to conclude that a lawyer experienced in appellate practice has any knowledge of that practice that is beyond the ken of a trial court. Moreover, given the variety of viewpoints prevalent in the legal community today, we find it calumnious to suggest that a trial court must even consider such an expert's opinion on *128 the issue of ineffective assistance of appellate counsel. Additionally, it is not an expert's opinion that is relevant but the reasoning of the attorney who handled the appeal. See State v. Preciose, supra, 129 N.J. at 462, 609 A.2d 1280.
That all notwithstanding, defendant argues that his right to a fair trial was violated by various instances of prosecutorial misconduct. We are satisfied from our review of the record that, even had appellate counsel specifically raised those instances in addition to the instances she did raise, all of the alleged misconduct did not have the magnitude to require a reversal of the conviction.
In the petition for post-conviction relief, defendant adds three categories to appellate counsel's list of prosecutorial improprieties: (1) improper references to matters outside the evidence and statements regarding opinion as to the veracity of testimony and about defendant's guilt; (2) misstatement and dilution of the State's burden of proof by repeatedly telling the jury that guilt beyond a reasonable doubt meant that the "odds are" defendant did it; (3) repeating disparaging remarks and ridicule of the defense and defense counsel.
To begin with, we conclude that, had the second issue been raised on appeal, it would have been found to be clearly without merit. See R. 2:11-3(e)(2). The complaints were not raised at trial and, consequently, would have been dealt with as plain error. See State v. Macon, 57 N.J. 325, 333, 273 A.2d 1 (1971). The trial court carefully, clearly, and correctly instructed the jury on the State's burden of proof. There is no basis for concluding the jury failed to follow that instruction and instead followed the prosecutor's "odds are" remarks. State v. Manley, 54 N.J. 259, 271, 255 A.2d 193 (1969).
As to the remaining two categories, we are equally satisfied that, had all the recited instances of prosecutorial misconduct been raised in concert with what was raised, there is no basis for concluding, in light of the trial record, the trial process was so distorted by prosecutorial excess as to create real doubt the jury *129 was diverted from a proper evaluation of the legitimate evidence. See State v. Ramseur, 106 N.J. 123, 322-23, 524 A.2d 188 (1987). To paraphrase the Supreme Court in State v. Kelly, supra, 97 N.J. at 218, 478 A.2d 364, while we do not condone all aspects of the prosecutor's conduct, we conclude that, in the context of the entire trial, the conduct did not cause defendant to be denied a fair trial. See State v. Marshall, 123 N.J. 1, 153, 586 A.2d 85 (1991).
Defendant also contends he was denied effective assistance of counsel on direct appeal by counsel's failure to raise as error the trial court's refusal to entertain counsel's challenge to the racial composition of the petit jury panel. Once again, we find that had the issue been raised it would have been deemed clearly without merit. See R. 2:11-3(e)(2).
Defense counsel's challenge to the array was based on speculation. Even on this appeal defendant takes the "position that a study of the Atlantic County jury selection process may reveal that blacks are substantially underrepresented on the petit juries." (emphasis added) The record does not disclose a prima facie case of denial of equal protection by systematic exclusion of a constitutionally cognizable group. State v. Ramseur, supra, 106 N.J. at 215-16, 524 A.2d 188.
In sum, our review of the record satisfies us that defendant has failed to establish appellate counsel's performance was deficient. Even assuming for the purposes of argument it was, defendant fails to demonstrate that but for that deficient performance this court would have overturned his conviction on the original appeal. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698, reh'g. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
Affirmed.